UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHNS HOPKINS UNIVERSITY**; <br><br> Plaintiff, <br><br> v. <br><br> **U.S. DEPARTMENT OF HOMELAND SECURITY**; <br><br> **U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**; <br><br> **CHAD WOLF**, in his official capacity as Acting Secretary of the U.S. Department of Homeland Security; and <br><br> **MATTHEW ALBENCE**, in his official capacity as Acting Director of the U.S. Immigration and Customs Enforcement; <br><br> Defendants. | Case No. 20-cv-1873 |

**MEMORANDUM IN SUPPORT OF MOTION TO PERMIT THREE DECLARANTS TO PROCEED BY PSEUDONYM**

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................1

FACTUAL BACKGROUND ..........................................................................................................1

LEGAL STANDARD ....................................................................................................................4

ARGUMENT .................................................................................................................................6

I. Anonymity Is Necessary to Protect Highly Sensitive and Personal Information ...............6

II. Disclosure of the Doe Declarants' Identities Would Create a Significant Risk of Physical and Psychological Harm.......................................................................................8

III. This Action Is Against the Government, Which Favors Anonymity................................10

IV. Any Risk of Unfairness to Defendants Is Minimal and Outweighed by the Risk to the Proposed Doe Declarants .............................................................................................10

CONCLUSION............................................................................................................................13

# INTRODUCTION

Plaintiff Johns Hopkins University respectfully seeks leave to submit declarations from three declarants by pseudonym. Each declarant is an international student of Johns Hopkins who would be affected by the policy under challenge and seeks to submit a declaration in connection with Johns Hopkins' Motion for a Temporary Restraining Order and Preliminary Injunction. Johns Hopkins is willing to consult with Defendants concerning the instant motion as soon as they are so prepared. However, should the Court grant Johns Hopkins' request to submit the proposed doe declarations (the "Proposed Doe Declarations"), attached hereto as Exs. A-C, Johns Hopkins will file the Proposed Declarations in support of the TRO and Preliminary Injunction Motion forthwith.

# FACTUAL BACKGROUND

Johns Hopkins brought suit to challenge Defendants' issuance of a July 6, 2020 directive (the "July 6 Directive") under which, among other things, university students holding F-1 visas would lose their visa status depending on their enrollment in remote learning courses, in contravention of the previous guidance issued by Defendants (the "March 13 Guidance"). *See* Dkt. No. 1 (Complaint). In connection with its motion for a temporary restraining order and preliminary injunction filed this morning, Dkt. No. 9, Johns Hopkins seeks to file pseudonymous declarations on behalf of three declarants who wish to withhold their identities from Defendants and the public (the "Proposed Doe Declarants").

The Proposed Doe Declarants are students of Johns Hopkins University and holders of F-1 student visas. *See* Exs. A–C (Proposed Doe Declarations). The proposed declarations, which are attached to this filing for the Court's reference, describe the crucial role that their student visas have played in the Declarants' lives, and the consequences they face alongside Johns Hopkins as a result of the July 6 Directive. The declarations generally relate to the Proposed

Declarants' reliance on the March 13 Guidance, the circumstances relevant to the July 6 Directive, the irreparable harm the Proposed Declarants and Johns Hopkins will suffer if the Directive is enforced, and public-interest considerations that should be weighed in assessing Johns Hopkins' motion for injunctive relief.

The Proposed Doe Declarants currently have authorizations arising from their status as F-1 visa recipients. Barring the injunctive relief Johns Hopkins has requested, however, they will be subject to loss of immigration status, arrest, detention, and removal by immigration authorities if they or Johns Hopkins are deemed to be out of compliance with the Directive. By virtue of their visa applications and other routine disclosures to Defendants, the government possesses the Proposed Doe Declarants' personal information, including their home addresses, and—in certain instances—social media handles or usernames. *See, e.g.*, U.S. Department of Homeland Security, Form I-20 (July 15, 2016).[1] As such, Defendants have the ability to give effect to the threat in the July 6 Directive to deport the Proposed Doe Declarants should their identities become known.

Each Proposed Doe Declarant reasonably fears retaliation for submitting a declaration in support of Johns Hopkins. Specifically:

- Student A is currently pursuing a graduate degree in public health at Johns Hopkins. Student A's family came to the United States years ago due to Student A's life-threatening asthma condition, having been advised that Student A would suffer grave health consequences by remaining in Student A's country of origin. Notably, Student A's entire family now resides in the United States. Furthermore,

---

[1] *Available at* https://studyinthestates.dhs.gov/sites/default/files/I-20_Active.pdf; U.S. Department of State, *Frequently Asked Questions on Social Media Identifiers in the DS-160 and DS-260* (June 4, 2019), https://travel.state.gov/content/dam/visas/Enhanced%20Vetting/CA%20-%20FAQs%20on%20Social%20Media%20Collection%20-%206-4-2019%20(v.2).pdf.

- Student A has elected an entirely remote course-load for the coming term specifically because Student A is at especially high risk of complications if exposed to COVID-19. Student A is terrified of being deported, torn from Student A's family and the only community Student A has known for well over a decade, and sent to a country that Student A's family left specifically due to Student A's health condition. Disclosing Student A's identity would compound that terror, and cause a tremendous amount of stress and anguish.

- Student B entered the United States after receiving an offer of admission to Johns Hopkins. Student B is the first person in their family to attend college in the United States. Receiving a student visa has allowed Student B to pursue a Master of Science degree at the Johns Hopkins Bloomberg School of Public Health. The effectuation of the July 6 Directive would lead to a significant economic hardship for Student B, as any lapse in the declarant's F-1 visa requirements would force Student B to leave the country, abandon research (necessitating additional costly education in India), lose a hard-won scholarship (totaling tens of thousands of dollars), break an apartment lease (incurring some $15,000 in costs) and lose Optional Training Program opportunities in the United States. Furthermore, returning to Student B's home country would risk exposing multiple family members—which includes especially high-risk individuals—to a heightened threat of COVID-19 infection. Disclosure of the Student B's identity to the Government would cause extreme mental stress; Student B is already exhausted from the fear and emotional turmoil of the uncertainty that the July 6 Directive has caused.

- Student C is currently matriculating at Johns Hopkins, with plans of completing an undergraduate degree at Johns Hopkins and progressing to medical school, residency, and fellowship in the United States.  Student C is now fearful of being unable to finish college or ever become a physician in the United States, and is afraid of being deported to a country where Student C has no immediate family, where Student C would likely be forced to restart undergraduate studies from scratch, and where all of Student C's academic progress thus far would be lost— all due to factors entirely outside of Student C's control.  Disclosing Student C's identity would increase these feelings of fear and vulnerability by orders of magnitude.

## LEGAL STANDARD

Courts may exercise discretion to authorize the submission of materials by anonymous parties and declarants.  *Does I Through III v. District of Columbia*, 216 F.R.D. 5, 6 n.1 (D.D.C. 2003) (noting that plaintiffs were granted leave to file via pseudonym).  Courts authorize parties to proceed without disclosing their identity to the public in cases involving "matters of a sensitive and highly personal nature," exercising their discretion in balancing the circumstances of each case with the tradition of openness in judicial proceedings.  *Doe v. Cabrera*, 307 F.R.D. 1, 4 (D.D.C. 2014).  Courts may also authorize parties to proceed without revealing their identities to the defendants when there is a particularly high risk of retaliation or harassment, as balanced against a low risk of prejudice to the defendants.  *See, e.g.*, *Women Prisoners of the D.C. Dep't of Corrs. v. District of Columbia*, 877 F. Supp. 634, 639 n.1 (D.D.C. 1994) (allowing prisoners to proceed under pseudonyms due to the risk of retaliation by prison guards), *vacated and modified in part on other grounds*, 899 F. Supp. 659 (D.D.C. 1995); *Campbell v. U.S. Dep't of Agric.*, 515 F. Supp. 1239, 1246 (D.D.C. 1981) (allowing plaintiffs to proceed anonymously in

4

an action challenging the agency's interpretation of the Food Stamp Act); *Gomez v. Buckeye Sugars*, 60 F.R.D. 106, 107 (N.D. Ohio 1973) (allowing plaintiffs to proceed under pseudonyms in a Fair Labor Standards Act because the plaintiffs feared retaliation from defendants who were their employers; *Yaman v. U.S. Dep't of State*, 786 F. Supp. 2d 148 (D.D.C. 2011) (allowing plaintiff to file her residential address under seal and ex parte to protect safety of her minor children).

Although the D.C. Circuit has not articulated a precise test for whether to allow persons to proceed anonymously, lower courts have applied the following five factors to parties seeking anonymity:

> (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature;
>
> (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;
>
> (3) the ages of the persons whose privacy interests are sought to be protected;
>
> (4) whether the action is against a governmental or private party; and
>
> (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Nat'l Ass'n of Waterfront Emp'rs v. Chao*, 587 F. Supp. 2d 90, 99 (D.D.C. 2008); *see also J.W. v. District of Columbia,* 318 F.R.D. 196, 198 (D.D.C. 2016) (applying the same factors to parents' request for anonymity for themselves while bringing a suit on behalf of their minor child); *Doe v. Cabrera,* 307 F.R.D. 1, 8 (D.D.C. 2014) (applying the same factors to plaintiff alleging sexual assault). All of these factors are relevant in this case except as pertains to the ages of the Declarants, who are all adults over the age of eighteen. The remaining factors

5

militate heavily in favor of allowing each of the Proposed Doe Declarants in this case to proceed via pseudonym.

## ARGUMENT

Each of the Proposed Doe Declarants faces grave risk of retaliation if Defendants learn their identities. Maintaining their anonymity is necessary to protect them against retribution for their support of Johns Hopkins and its legal action to enjoin the July 6 Directive. At the same time, protecting their identities from the public and the government poses no risk of unfairness to Defendants. The Proposed Doe Declarants are not parties to this case, and the government has no need to know their identities in order to address the issues before this Court.

## I. ANONYMITY IS NECESSARY TO PROTECT HIGHLY SENSITIVE AND PERSONAL INFORMATION

Numerous federal courts have recognized that information related to immigration status is highly sensitive and may warrant protection from disclosure. *See, e.g.*, *Hispanic Interest Coal. of Ala. v. Governor of Ala.*, 691 F.3d 1236, 1247 & n.8 (11th Cir. 2012) (noting that revealing immigration status of school children could lead to "criminal prosecution, harassment and intimidation" and identifying cases in which courts allowed immigrant plaintiffs to proceed anonymously); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1169 (9th Cir. 2000) (crediting plaintiffs' "highly vulnerable [immigration] status" as one of several factors weighing in favor of allowing plaintiffs to proceed anonymously); *In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987) (stating in a protective order ruling that allowing defendant employers to seek discovery regarding plaintiffs' immigration status could inhibit them from pursuing their rights "because of possible collateral wholly unrelated consequences, [and] because of embarrassment and inquiry into their private lives"); *Oah v. Tabor*, 1991 WL 120087, at *1 n.1 (allowing an immigrant plaintiff to proceed anonymously).

The sensitivity of information relating to immigration status is further heightened when the action is against a governmental entity, which could use the information to arrest, detain, or even deport immigrants involved in the lawsuit (in case of the federal government) or facilitate those actions by the federal government (in cases of state or local governmental entities). For that reason, courts are especially inclined to shield the identity of immigrants with uncertain status challenging actions that implicate their status. *See, e.g.*, *Lozano v. City of Hazelton*, 620 F.3d 170, 195 (3d Cir. 2010) (allowing plaintiffs to proceed without disclosing their identities to defendants, because plaintiffs "could legitimately fear that defendant [municipality] was determined to expose their legal status to federal authorities"), *vacated and remanded on other grounds*, 563 U.S. 1030 (2011); *Puente Az. v. Arpaio*, No. CV14-1356-PHX-DGC, 2014 U.S. Dist. LEXIS 166223, at *5 (D. Ariz. Dec. 1, 2014) (allowing undocumented immigrants to file Doe declarations in a challenge against state statutes criminalizing seeking employment without federal work authorization); *Keller v. City of Fremont*, No. 8:10-cv-270, 2011 WL 41902, at *1-*3 (D. Neb. Jan. 5, 2011) (allowing undocumented immigrants to proceed anonymously as plaintiffs in case challenging a ballot initiative making it unlawful for any entity to knowingly or recklessly lease or rent property to undocumented immigrants). "[F]ederal courts have recognized that inquiries into immigration status can have an *in terrorem* effect, limiting the willingness of plaintiffs to pursue their rights out of fears of the consequences of an exposure of their position." *Id.* at *2.

Here, submitting a declaration (that discloses their name) in support of Johns Hopkins' challenge against the administration could attract unwanted attention to the Proposed Doe Declarants' immigration status—particularly if Johns Hopkins is forced to prepare and submit I-20 forms for the Proposed Doe Declarants and other F-1 students pursuant to the July 6

7

Directive.  Moreover, having their names "in the public domain, especially in the Internet age," could subject them to "unnecessary interrogation, criticism, or psychological trauma," in addition to the significant risk of retaliation they face, as discussed *infra*.  *Cabrera*, 307 F.R.D. at 7 (allowing plaintiff alleging sexual assault to proceed anonymously).  Given the magnitude and likelihood of such scrutiny and harassment, combined with the vulnerability of such declarants, disclosing the Proposed Doe Declarants' immigration status would lead to harm that is well beyond the "mere[] . . . annoyance and criticism that may attend any litigation."  *J.W.*, 318 F.R.D. at 200 (internal quotation and citation omitted).

## II. DISCLOSURE OF THE DOE DECLARANTS' IDENTITIES WOULD CREATE A SIGNIFICANT RISK OF PHYSICAL AND PSYCHOLOGICAL HARM

Disclosure of the Proposed Doe Declarants' identities would expose them to a heightened risk of arrest, detention, and removal—an outcome that the July 6 Directive expressly contemplates.  *See* Student and Exchange Visitor Program, U.S. Immigration and Customs Enforcement, *Broadcast Message: COVID-19 and Fall 2020* (July 6, 2020).  Since the announcement on July 6, 2020, F-1 visa holders have been living in fear that they can imminently lose the very protection that brought them to the United States in the first place—and has allowed them to contribute to the Johns Hopkins community since they stepped foot on campus.

Their fear is warranted.  *First*, F-1 visa holders are particularly vulnerable to retaliation because they have furnished personal identification information to the Government as part of their visa application process, and the July 6 Directive raises the specter of sudden loss of visa status, followed by "consequences including, but not limited to, the initiation of removal proceedings."  *Id*.  *Second*, the number of immigration-related removals has increased in fiscal year 2019 with "ICE's Enforcement and Removal Operations . . . officers arrest[ing]

8

approximately 143,000 aliens and remov[ing] more than 267,000 – which is an increase in removals from the prior year."  U.S. Immigration & Customs Enforcement, *ICE Statistics* (Jan. 9, 2020), https://www.ice.gov/statistics.  This continues a trend that accelerated in 2017, with ICE reporting that in "the 100 days since President Donald J. Trump signed Executive Orders (EOs) regarding immigration enforcement priorities, U.S. Immigration and Customs Enforcement (ICE) has arrested more than 41,000 individuals who are either known or suspected of being in the country illegally.  As compared to the same period in 2016, the annual arrest rate increased by 37.6 percent."[2]  *Third*, the President already has tweeted in response to efforts to push back on the July 6 Directive, including lawsuits like Johns Hopkins', suggesting he would "tell[] the Treasury Department to re-examine [the universities'] Tax-Exempt Status[,]"[3] That is, the President is threatening to retaliate against universities for challenging the July 6 Guidance. In these circumstances, any reasonable declarant in the position of these Proposed Doe Declarants would have a real and well-founded fear of suffering retaliation simply because they supported the instant lawsuit against this Administration.  Unless this Court grants Doe status, therefore, willingness to participate and to provide sworn submissions in a case adverse to the Administration would be chilled and very likely precluded as a practical matter.

Revealing the Proposed Doe Declarants' identities would put their well-being and safety at risk, because it would entail disclosing their immigration status to the very source of that retaliatory threat.  *See Lozano*, 620 F.3d at 195 (allowing plaintiffs to not reveal their identities to defendant because plaintiffs would be discouraged from vindicating their rights "if doing so would require alerting federal immigration authorities to their presence"); *Int'l Refugee*

---

[2]  U.S. Immigration & Customs Enforcement, *ICE ERO immigration arrests climb nearly 40%* (Nov. 2, 2017), https://www.ice.gov/features/100-days.

[3]  Donald J. Trump (@realDonaldTrump), Twitter (July 10, 8:49 AM), https://twitter.com/realDonaldTrump/status/1281616586273468416.

9

*Assistance Project (IRAP) v. Trump*, No. TDC-17-0361, 2017 WL 818255, at *2 (D. Md. Mar. 1, 2017) (allowing plaintiffs to proceed anonymously partly because disclosure of plaintiffs' identities to the Government could dissuade them from pursuing their rights in court while their relatives' visa applications were pending); *Puente Az.*, 2014 U.S. Dist. LEXIS 166223, at *5–*6 (finding that undocumented immigrant declarants "reasonably fear serious consequences if their identities are disclosed" because defendants are seeking to prosecute the conduct discussed in their declarations); *Keller*, 2011 WL 41902, at *2 (allowing plaintiffs to not reveal their identities while challenging a local ordinance that would criminalize renting to undocumented immigrants).

### III. THIS ACTION IS AGAINST THE GOVERNMENT, WHICH FAVORS ANONYMITY

The very fact that this action is against the Government and not against a private party weighs in favor of allowing the Proposed Doe Declarants to proceed via pseudonym. "[A]lthough the mere filing of a lawsuit against a private party may cause the defendant reputational and economic harm, such that fairness requires the identification of the plaintiffs, the government is not vulnerable to similar reputational harm, particularly in a case involving a challenge to the constitutional, statutory, or regulatory validity of government activity." *IRAP*, 2017 WL 818255, at *3; *see also J.W.*, 318 F.R.D at 201 ("Courts have concluded that anonymous litigation is more acceptable when the defendant is a governmental body[.]"). Because there is no due-process concern when the Government is the defendant, there is all the more reason to credit the powerful considerations favoring *Doe* status here.

### IV. ANY RISK OF UNFAIRNESS TO DEFENDANTS IS MINIMAL AND OUTWEIGHED BY THE RISK TO THE PROPOSED DOE DECLARANTS

Any potential unfairness to Defendants is minimal and outweighed by the Proposed Doe Declarants' need for anonymity. *First*, the Proposed Doe Declarants are third parties. The

tradition of public access and open proceedings is implicated to a much lesser degree when the status of third-party declarants (rather than the actual litigants) is at issue. *See Puente Az.*, No. CV14-1356 PHX DGC, No. 2016 WL 7743406, at *4 (D. Ariz. Jan. 22, 2016) (noting in a protective order ruling in favor of non-party Doe declarants that "the public's interest in an open and fair adjudication is not seriously impaired" when plaintiffs are openly identified and the proceedings would be public); *cf. J.W.*, 318 F.R.D. at 201 (noting that courts are wary of permitting anonymous litigation when doing so would pose "litigation obstacles for defendants"). Here, the real parties-in-interest—Johns Hopkins, DHS, ICE, Chad Wolf, and Matthew Albence—are fully identified; simply allowing non-party declarants to proceed via pseudonym would not seriously hinder the Government's defense.

*Second*, the issues in this case are predominantly legal in nature and do not turn on the Proposed Doe Declarants' background or credibility. In *Campbell v. U.S. Dep't of Agric.*, 515 F. Supp. 1239 (D.D.C. 1981), a dispute over the proper interpretation of the Food Stamp Act, the court found that, because the issues in the case were primarily legal in nature, Jane Doe plaintiffs were not required to divulge their identities to the defendants in seeking declaratory and injunctive relief that would affect all recipients of social security disability. *Id.* at 1246; *see also Lozano*, 620 F.3d at 195 (agreeing with district court's conclusion that "because the Doe Plaintiffs' identity information was not central to their claims, restricting [the defendant's] access to that information would not be prejudicial"); *IRAP*, 2017 WL 818255, at *3 (finding that "any prejudice to defendants" in a case with anonymous plaintiffs is "limited because the Doe Plaintiffs are challenging the constitutional and statutory validity of a governmental order, such that the questions presented in this case do not depend on identifying the specific parties but instead are purely legal" (internal quotations and citations omitted)).

11

Here, the Proposed Doe Declarants seek to provide the Court with information in support of Johns Hopkins' TRO and Preliminary Injunction Motion that contextualizes how the March 13 Guidance and its rescission through the July 6 Directive have affected Johns Hopkins and the broader university community. Because Johns Hopkins' claims against Defendants do not depend on the particularized facts and circumstances of the Proposed Doe Declarants, but revolve around the question of the legality of Defendants' decision to rescind the March 13 Guidance and issue the July 6 Directive, any risk of unfairness from allowing Doe status is minimal.

*Third*, Defendants have no present need for the identity of the Proposed Doe Declarants as neither the claims at issue on the merits nor Johns Hopkins' request for preliminary relief hinges on their identity. In the unlikely event that Defendants determine later in the litigation that they have an actual need for the declarants' identities, they could then make a motion attempting to demonstrate such need. In the unlikely event that such a situation arose, Johns Hopkins could at that time either move for a Protective Order or potentially withdraw the declarations if the Proposed Doe Declarants so wish.[4]

---

[4] *See* Fed. R. Civ. P. 26(c); *see also* Order Granting Mot. for Protective Order, *Doe 1 v. Trump*, No. CV 17-1597 (D.D.C. Sept. 13, 2017) (Dkt. No. 38) (limiting disclosure of pseudonym plaintiffs' identities to counsel for defendants and those in the employ of counsel for defendants in a suit challenging the presidential memorandum prohibiting accession of transgender military members); *Alexander v. FBI*, 186 F.R.D. 54 (D.D.C. 1998) (limiting disclosure of plaintiffs' medical information to counsel of record and not the defendant agency); *Alexander v. Falk*, No. 16-cv-2268, 2017 WL 3749573 (D. Nev. Aug. 30, 2017) (ordering disclosure of plaintiffs' identity to defendants' counsel only, with a prohibition on disclosing plaintiffs' identity to counsel's clients); *see also D'Onofrio v. SFX Sports Grp.*, 256 F.R.D. 277, 280 (D.D.C. 2009) ("[T]here need not be a great deal of harm to justify protecting information when doing so would not prejudice the party who will be prevented from seeing the information.").

## CONCLUSION

For the foregoing reasons, Johns Hopkins respectfully requests that the Court permit the Proposed Doe Declarants to proceed via pseudonym, at which point their declarations would officially be filed on the docket in support of Johns Hopkins' TRO and Preliminary Injunction Motion, as also filed this same day.

DATED: July 13, 2020                         Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN LLP

By       */s/ William A. Burck*
William A. Burck (D.C. Bar No. 979677)
Derek L. Shaffer (D.C. Bar No. 478775)
1300 I Street NW, 9th Floor
Washington, DC 20005
(202) 538-8000
derekshaffer@quinnemanuel.com
williamburck@quinnemanuel.com

Kathleen Sullivan*
Crystal Nix-Hines*
Shon Morgan*
Marina Lev*
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
kathleensullivan@quinnemanuel.com
shonmorgan@quinnemanuel.com
crystalnixhines@quinnemanuel.com
marinalev@quinnemanuel.com

*Applications for admission *pro hac vice* filed

*Attorneys for Plaintiff Johns Hopkins University*